FILED
2005 May-31 PM 05:26
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **DR. ALEXANDER MCELROY,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) Civil Action No.  CV-04-S-2525-NE |
| | ) |
| **LAWRENCE COUNTY BOARD** | ) |
| **OF EDUCATION,** *et al.***,** | ) |
| | ) |
| **Defendants.** | ) |

**MEMORANDUM OPINION**

This action is before the court on plaintiff's motion to compel defendants to respond to interrogatories and requests for production of documents.[1] Plaintiff claims that defendants discriminated against him on the basis of his race, African-American, in violation of the Fourteenth Amendment to the Constitution of the United States, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981.  Plaintiff seeks redress for the constitutional violation pursuant to 42 U.S.C. § 1983.[2]  Upon consideration of the parties' briefs[3] and evidentiary submissions,[4] the court finds that plaintiff's motion should be granted.

---

[1] Doc. no. 16.

[2] *See* doc. no. 1, ¶¶ 1, 21-33.

[3] Doc. nos. 16, 19, 21, and 23.

[4] Doc. no. 16, Exs. A-C.

## I. FACTUAL BACKGROUND

Plaintiff filed claims against the Lawrence County Board of Education ("the Board"), five members of the Board, and the Superintendent of the Lawrence County School System.[5] Plaintiff is an American citizen of African descent ("African-American"). He has been employed as a Special Education instructor at Hazlewood High School in the Lawrence County School System since 1999.[6] He claims that defendants have unlawfully denied his applications for Principal and Assistant Principal positions on the basis of his race.

Defendants accepted applications for the following positions in 2003: (1) Assistant Principal of Lawrence County High School; (2) Principal of Moulton Elementary School; (3) Principal of East Lawrence Middle School; (4) Principal of Speake School; (5) Principal of Hatton High School; (6) Principal of East Lawrence High School; and (7) Assistant Principal of Hatton High School. Plaintiff applied (or attempted to apply) for each of these positions, but defendants hired a white applicant each time.[7]

Plaintiff served defendants with the following interrogatories on January 18, 2005:

---

[5] *See* doc. no. 1.
[6] *Id.*, ¶ 10.
[7] *See id.*, ¶¶ 10-17.

3.  Please identify every individual employed in the last 20 years by the defendants as a Principal at any school in the Lawrence County school system; and, state each individual's race and date of hire in that position.

4.  Please identify every individual employed in the last 20 years by the defendants as an Assistant Principal at any school in the Lawrence County school system; and, state each individual's race and date of hire in that position.

5.  Please identify every individual who has applied, been interviewed, been considered, or expressed interest in the last 20 years for any Principal position in the Lawrence County school system.  For each such individual, please state:

    a.  The position for which they applied, were interviewed, were considered or expressed interest;
    b.  Their race;
    c.  Their last known mailing address and telephone number;
    d.  Every reason why the individual was not hired for the position.

6.  Please identify every individual who has applied, been interviewed, been considered, or expressed interest in the last 20 years for any Assistant Principal position in the Lawrence County school system.  For each individual, please state:

    a.  The position for which they applied, were interviewed, were considered or expressed interest;
    b.  Their race;
    c.  Their last known mailing address and telephone number;
    d.  Every reason why the individual was not hired for the position.[8]

---

[8] Doc. no. 16, Ex. A (Plaintiff's First Interrogatories to Defendants); *see also id.*, Brief in Support of Motion to Compel, at 1-3.

Defendants responded to interrogatories 4, 5, and 6 on February 18, 2005 as follows:

> Defendants object to this request in its present form because and to the extent it is unreasonable and oppressive in scope; because it would require inordinate time and resources to locate documents or information that may not exist; because it is unreasonably vague; because it seeks information that is manifestly irrelevant and inadmissible; because it extends to categories of persons and actions that involve different decisionmakers and circumstances; and because it is not calculated to lead to the discovery of relevant admissible evidence . . . .[9]

Plaintiff also served defendants with the following requests for production of documents on January 18, 2005:

16. All documents relating to any individual who has applied for or expressed interest in any Principal position in the last 20 years. This request includes, but is not limited to, applications, resumes, letters of interest, interviews, interview notes, interview questions, and letters of inquiry into the availability of such positions.

17. All documents relating to any individual who has applied for or expressed interest in any Assistant Principal position in the last 20 years. This request includes, but is not limited to, applications, resumes, letters of interest, interviews, interview notes, interview questions, and letters of inquiry into the availability of such positions.

18. All documents identifying every individual employed in the last 20 years by the defendants as a Principal at any school in the Lawrence County school system.

19. All documents identifying every individual employed in the last 20 years by the defendants as an Assistant Principal at any school

---

[9] *Id.*, Ex. B. Defendants' response to interrogatory 3 was slightly different. It omitted the phrase "and to the extent," and included the phrase "chronologically remote" so that a section of the response read "because it is unreasonably vague and chronologically remote."

>   in the Lawrence County school system.
>
> 20. All documents identifying every individual who has applied in the last 20 years for any Principal position in the Lawrence County school system.
>
> 21. All documents identifying every individual who has applied in the last 20 years for any Assistant Principal position in the Lawrence County school system.[10]

Defendants responded to each of these requests on February 18, 2005, as follows:

> Defendants object to this request in its present form because and to the extent it is unreasonable and oppressive in scope, because it would require inordinate time and resources to locate documents that may not exist, because it is unreasonably vague, because it asks for information that is manifestly irrelevant and inadmissible, because it extends to categories of persons and decisions that involve different decisionmakers and circumstances, and because it is not calculated to lead to the discovery of relevant evidence. . . . .[11]

## II. DISCUSSION

"[D]iscovery in Title VII cases is 'not without limits. The information sought must be relevant *and* not overly burdensome to the responding party.'" *Wright v. AmSouth Bancorporation*, 320 F.3d 1198, 1205 (11th Cir. 2003) (emphasis supplied) (quoting *Washington v. Brown & Williamson Tobacco Corp.*, 959 F.2d 1566, 1570 (11th Cir. 1992)).

---

[10] Doc. no. 16, Ex. C (Plaintiff's First Request for Production to Defendants); *see also id.,* Brief in Support of Motion to Compel, at 3-5.

[11] *Id.*, Ex. B, at 9-11.

**A.     Relevance**

"'[R]elevance is broadly defined in the context of discovery.'" *Cox v. Administrator United States Steel & Carnegie*, 17 F.3d 1386, 1420 (11th Cir. 1994) (quoting *Wyatt v. Kaplan*, 686 F.2d 276, 284 (5th Cir. 1982)).  Under the Federal Rules,

> Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. . . . .

Fed. R. Civ. P. 26(b)(1).  "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.*

Where, as here, a plaintiff brings an individual claim of disparate treatment, he may present circumstantial evidence of discrimination following the burden-shifting framework announced by the Supreme Court in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973), and then elaborated in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981).  Assuming that plaintiff establishes a *prima facie* case of racial discrimination, and defendants offer a neutral, non-discriminatory reason for their employment decision, plaintiff must prove that defendants' proffered reason is, in fact, a mere pretext for discrimination on the basis of race. *See, e.g.,*

*McDonnell Douglas*, 411 U.S. at 800-04 (applying burden-shifting framework to discrimination claim under Title VII); *Lee v. Conecuh County Board of Education*, 634 F.2d 959, 961-63 (11th Cir. 1981) (section 1983); *Howard v. BP Oil Company, Inc.*, 32 F.3d 520, 524 n.2 (11th Cir. 1994) (section 1981).

Plaintiff anticipates using his requested discovery "to conduct a statistical analysis demonstrating that defendants have historically refused to hire African-Americans" to Principal and Assistant Principal positions.[12]  Indeed, as the Supreme Court explained in *McDonnell Douglas*:

> [E]vidence that may be relevant to any showing of pretext includes . . . petitioner's general policy and practice with respect to minority employment.  On the latter point, statistics as to petitioner's employment policy and practice may be helpful to a determination of whether petitioner's refusal to rehire respondent in this case conformed to a general pattern of discrimination against blacks.

*Id.* at 804-05.

Plaintiff appropriately limits his discovery to (i) hiring decisions (ii) made by the Lawrence County School Board (iii) concerning Principal and Assistant Principal positions.  *See Davis v. Board of School Commissioners of Mobile County*, 517 F.2d 1044, 1053 (5th Cir. 1975[13]) (holding that, in light of the teachings of *McDonnell*

---

[12] Doc. no. 16 (Motion to Compel), at 1.

[13] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

*Douglas*, and in a case where two assistant principals claimed they were denied promotions because of their race, plaintiffs were "entitled to full discovery with respect to *the category of position or positions sought* in an effort to establish all statistical, policy and practice data of relevance to their claims") (emphasis supplied).

The fact that plaintiff's discovery asks defendants to assemble information dating back twenty years, to 1985, does not defeat the relevance of the information sought. "The [former] fifth circuit [] long recognized that discriminatory intent may be found to exist even where the record contains no direct evidence of bad faith, ill will or any evil motive on the part of public officials." *Williams v. City of Dothan*, 745 F.2d 1406, 1414 (11th Cir. 1984) (citations omitted). "The Supreme Court recognized these realities in its decision in [*Village of*] *Arlington Heights* [*v. Metropolitan Hous. Dev. Corp.*, 429 U.S. 252 (1977)], where it noted that discriminatory intent could be established through such evidentiary factors as . . . a history of discriminatory official actions." *Williams*, 745 F.2d at 1415. A district court may not limit discovery on the basis of relevance where, as here, a plaintiff seeks to examine recent hiring decisions in light of an employer's historical practices and policies. *Cf. id.* at 1414-15 (where historical background of municipality's funding decisions could evidence racially discriminatory intent, district court improperly limited temporal scope of discovery on relevance grounds).

Defendants' contrary position is ultimately unpersuasive. Defendants observe that

> most public school board employment decisions are made by elected board of education members who serve six-year terms. Similarly, they are based on recommendations from the superintendent of education who, in turn, often relies on recommendations, input, or other information supplied by principals and other sources. Self-evidently, these actors change over time. As would be expected, the Lawrence County School Board of Education has had a substantial turnover in the last twenty years in virtually all the positions involved in the employment process. The suggestion that there is any legal or logical nexus between a decision not to recommend or hire [plaintiff] for a position in 2005 and an employment decision made in a different school by different administrators and school board members in 1985 is plainly preposterous. Put simply, the scope of the present discovery request includes innumerable positions of multiple schools made by or involving potentially dozens (if not hundreds) of different applicants, employees, administrators, superintendents, and board members. *The relevant pool of comparators, and thus the scope of discovery, should be limited to decisions made by the same decisionmakers who were involved in the employment decisions of which the plaintiff specifically complains.*[14]

Defendants cite *Marshall v. Westinghouse Electric Corporation*, 576 F.2d 588 (5th Cir. 1978), as binding authority.[15] In *Marshall*, the Secretary of Labor brought an age discrimination claim against Westinghouse Corporation on behalf of Sam Eldon, who had worked as a "field operator" in the company's "elevator division" prior to his termination. *See id.* at 589-90, 592. During discovery, Eldon served defendants with interrogatories seeking "information about all persons whose

---

[14] Doc. no. 19 (Memorandum in Opposition), at 2-3 (emphasis supplied).

[15] *See supra* note 13.

employment with the defendant's elevator division was terminated between 1972 and the present." *Id.* at 592. This request "encompassed some 7,500 employees in thirty-two districts and three manufacturing plants." *Id.* The district court denied plaintiff's motion to compel this discovery, and the Former Fifth Circuit affirmed, reasoning as follows:

> Clearly the type of statistical evidence that [Eldon] sought through the discovery order *was relevant* to his individual case. *Cf. McDonnell Douglas Corp. v. Green, supra*; *Rich v. Martin Marietta Corporation*, 522 F.2d 333 (10 Cir. 1975); *Laugesen v. Anaconda Company*, [510 F.2d 307 (6th Cir. 1975)]. A plaintiff who must shoulder the burden of proving that the reasons given for his discharge are pretextual should not normally be denied the information necessary to establish that claim. That rule does not, however, permit a plaintiff to "go fishing" and a trial court retains discretion to determine that a discovery request is too broad and oppressive.
>
> . . . .
>
> This circuit has recently said that in the context of investigating an individual complaint the most natural focus is upon the source of the complained of discrimination[: *i.e.*,] the employing unit or work unit. *EEOC v. Packard Electric Division, General Motors Corp.*, 569 F.2d 315 (5 Cir. 1978). To move beyond that focus the plaintiff and the EEOC must show a more particularized need and relevance. In this case the plaintiff made no attempt to do so, *Rich v. Martin Marietta Corporation*, 522 F.2d 333 (10 Cir. 1975). For that reason we cannot say that the trial court's refusal of discovery was improper.

*Marshall*, 576 F.2d at 592 (emphasis supplied).

The Eleventh Circuit took a similar course in *Earley v. Champion International Corporation*, 907 F.2d 1077 (11th Cir. 1990), which defendants also cite. In *Earley*,

two plaintiffs claimed they were terminated on the basis of their age, in violation of the Age Discrimination in Employment Act. *Id.* at 1079-80. Although the plaintiffs had worked at one facility in Alabama, *see id.* at 1079, they sought to compel "nationwide discovery about 'the identification of each person responsible for [the employer's nationwide] operation, the identification and function of each department, and the number and type of employees in each department and in the Company as a whole, by age for each year since January 1, 1980.'" *Id.* at 1084. The district court found this request to be *unduly burdensome* and denied the motion to compel discovery. *Id.* The Eleventh Circuit affirmed, reasoning that "'in the context of investigating an individual complaint the most natural focus is upon the source of the complained of discrimination — the employing unit or work unit.'" *Id.* at 1084 (citing *Marshall*, 576 F.2d at 592). "Where, as here, the employment decisions were made locally, discovery on intent may be limited to the employing unit." *Id.* "A vague possibility that loose and sweeping discovery might turn up something suggesting [discriminatory motive] does not show particularized need and likely relevance that would require moving discovery beyond the natural focus of the inquiry." *Id.* at 1085.

Defendants' reliance on *Marshall* and *Earley* is misplaced. First, plaintiff has appropriately limited his discovery to the precise "employing unit" which failed to hire him — the Lawrence County Board of Education. Plaintiff does not seek

11

information reflecting the employment practices of all counties in the State of Alabama, or beyond.

Of course, defendants advance the novel theory that any group of decisionmakers, working together at any one time, may be considered an "employing unit." Defendants' arguments would be unpersuasive, even if the court were to adopt this fiction. Under *Marshall* and *Earley*, a district court may limit discovery which reaches beyond the "natural focus of the inquiry" if it is *overly burdensome* to the responding party. The critical insight, of course, is that there are two checks on unbridled discovery: relevance; and burden on the responding party. Defendants' reliance on *Marshall* and *Earley*, if it is appropriate at all, must necessarily come at the *second* part of this inquiry. Defendants' attempt to defeat plaintiff's discovery requests on relevance grounds is unavailing.

**B.     Burden on Reponding Party**

The court must now ask whether plaintiff's discovery is overly burdensome to defendants. Federal Rule of Civil Procedure 26 authorizes a court to limit discovery where "the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(iii).

"Th[is] rule further provides that the court may act either on its own initiative or after a party has made a motion for a protective order." *Panola Land Buyers Association v. Shuman*, 762 F.2d 1550, 1559 (11th Cir. 1985).

In *Shuman*, defendants moved for a protective order on the grounds that plaintiff's discovery requests were overly burdensome. *See id.* at 1559. The defendants stated that "the discovery requests [were] 'extremely lengthy, detailed, and virtually unrestrained in scope,'" and that a "response would require 'considerable time and expense.'" *Id.* at 1559 n.6. The district court granted the motion for a protective order. *See id.* at 1558. The Eleventh Circuit reversed, observing that defendants had failed to state their objections with "sufficient specificity." *Id.* at 1559. "To be adequate, objections which serve as the basis of a motion for protective order under Fed.R.Civ.P. 26 should be 'plain enough and specific enough so that the court can understand in what way the interrogatories are alleged to be objectionable.'" *Id.* (citations omitted).

Logic dictates that this same rationale must apply where, as here, the court must act on its own initiative to curtail discovery. "Under well-settled law, the party resisting production bears the responsibility of establishing undue burden." *Coker v. Duke & Company, Inc.*, 177 F.R.D. 682, 686 (M.D. Ala. 1998) (citation omitted). "The resisting party must make a particular and specific demonstration of fact and

13

cannot rely on simply conclusory assertions about the difficulty of complying with a discovery request." *Id.* (citation omitted).

Here, defendants state that plaintiff's discovery requests: (1) are "manifestly unreasonable in temporal and substantive scope and is therefore objectionable"; (2) "seek[] information that, by its nature, would be difficult if not impossible to retrieve"; and (3) "[t]o the extent it could be located at all, it is likely that such data would be incomplete, based on compilation or retention procedures that are not currently in place or that could not be fully explained by currently employed personnel."[16] The court may not curtail discovery on the basis of these conclusory assertions.

Certainly, the court gave defendants ample opportunity to state their objections with sufficient specificity. Plaintiff filed his motion to compel discovery on April 5, 2005.[17] Defendants filed their response on April 20, 2005.[18] Plaintiff filed a reply brief on April 25, 2005, contending that defendants had failed to specify how discovery was unduly burdensome and, therefore, had failed to carry their burden on this issue.[19] The court ordered defendants to respond to this contention on or before May 23, 2005,[20] *but they failed to do so.*

---

[16] Doc. no. 19, Memorandum in Opposition, at 2.

[17] Doc. no. 16.

[18] Doc. no. 19.

[19] *See* doc. no. 21 at 1-2.

[20] *See* order issued May 16, 2005 (no docket number assigned).

Plaintiff's motion to compel discovery will be granted. Defendants must respond to plaintiff's discovery requests by June 17, 2005.

DONE this 31st day of May, 2005.

_____
United States District Judge